BISHOP ET AL. *v.* THE DEPOSIT BANKING CO.

(Decided November 30, 1928.)

*Mr. J. W. Jacoby,* for plaintiffs in error.
*Mr. E. M. Wickham,* for defendant in error.

HOUCK, J.   The action was on a promissory note brought by the Deposit Banking Company against Wesley Bishop and Archie J. Bishop.   Recovery was sought against the Bishops as indorsers and guarantors on said note.

The note in question was made to Wesley Bishop & Son, and signed by Elmer Gabriel and Clara Gabriel, as makers, on the 6th day of April, 1923,

and indorsed by Wesley Bishop & Son the following day and delivered to the bank. An inspection of the note shows that the printed words, "Demand, notice and protest waived. Payment guaranteed," were stamped over this indorsement. The note shows by indorsement on the back thereof, and the evidence is undisputed, that the Gabriels, the makers, made four payments of interest on this note during the years 1924 and 1925. Elmer Gabriel, one of the makers, was adjudicated a bankrupt in 1925, and this action was started by the bank against the Bishops and Clara Gabriel, another of the makers, on the 22d day of June, 1927. However, Clara Gabriel confessed judgment.

The suit on this note was to recover the balance due thereon, with interest, from Wesley Bishop and Archie J. Bishop, who were partners doing business as Wesley Bishop & Son, as indorsers and guarantors.

The answer of Wesley Bishop and Archie J. Bishop admitted the partnership, the execution and delivery of the note to them by the Gabriels, and that they indorsed it to the bank. The answer further specifically avers that the words "Demand, notice and protest waived. Payment guaranteed," were written or placed over their indorsement after the indorsement was made, and also so written or placed over their indorsement without their knowledge and consent.

The legal effect of this defense is that the placing of the words, "Demand, notice and protest waived. Payment guaranteed," over their indorsement after the indorsement was made, which, they claim, was done without their knowledge, approval and consent,

is such an alteration or change in the note as invalidates it as against them, and that such change of the liability of the Bishops as indorsers on said note, and as guarantors, releasing the bank from the provision requiring that notice of dishonor be given to the Bishops, constitutes a material alteration, and releases the Bishops from all liability on the note.

The answer also avers that no notice was given the Bishops of the nonpayment of the note at maturity. They further claim that they had no notice of the claimed indorsement above their indorsement in blank until two or three years after the transaction between the bank and the Bishops.

The cause was tried to a jury, and a verdict returned in favor of the bank and against the Bishops for the full amount sued for, with interest.

Error is prosecuted to this court seeking a reversal of the judgment entered below for the following reasons:

(a) The court erred in admitting evidence offered by plaintiff below.

(b) That the verdict and judgment are not sustained by the evidence.

(c) That the verdict and judgment are contrary to law.

It will be observed from the statement of the case hereinbefore made that under the pleadings but one question of fact was presented to the jury for determination, to wit: ''Were the words, 'Demand, notice and protest waived. Payment guaranteed,' placed above the indorsement of Wesley Bishop & Son at the time they indorsed said note, or thereafter, without their consent, knowledge and approval?''

The question as to whether the jury decided this question right must be determined by the evidence contained in the bill of exceptions, which we have read and analyzed with much care and attention.

Under the evidence before us, we are bound to reach the conclusion that there is an absolute failure of proof to show or even tending to show that the words in question were placed on said note, and over the words, "Wesley Bishop & Son," at the time the Bishops indorsed it, and there is a failure of proof to show that thereafter they consented to or approved of this indorsement. The evidence is undisputed that the Bishops had no knowledge of the printed words above their signature until two or three years after the transaction.

We reach this conclusion from the testimony of Conklin, the cashier and president of the bank, and the testimony of the Bishops, with whom the transaction was had.

We find that the rule in Ohio, as well as in other jurisdictions, is well settled that the holder of a note indorsed in blank by the payee has no right to change the contract of the indorser by writing over the name of the indorser a contract of guaranty without the knowledge and consent of the indorser. See *Belden* v. *Hann,* 61 Iowa, 44, 15 N. W., 591.

Section 8228, General Code of Ohio, reads: "A cancellation made unintentionally or under a mistake, or without authority of the holder, is inoperative. When an instrument or any signature thereon appears to have been cancelled the burden of proof lies on the party who alleges that the cancellation was made unintentionally, or under a mistake or without authority."

Section 8229, General Code of Ohio, reads: "When a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alteration and subsequent indorsers. But when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor."

It is earnestly contended by counsel for plaintiff in error that the trial judge erroneously admitted testimony on behalf of the bank.

Conklin, the president of the bank, testified as follows:

"Q. I will ask you to tell the jury whether you ever take a note under those circumstances without stamping it with those words? A. We do not.

"Q. Tell the jury why. A. Well, if we would accept this note without waiving the protest then on the day the note was due we would have to have it protested and notice would have to be served on the indorser. So we have that waived to save us that expense and trouble."

The court, in numerous places in the record, permitted the witness Conklin to testify as to the custom of banks, and especially of the bank with which he was connected, as to the general rule of banks, as well as of his bank, and as to what would happen if these words were not placed above or over the indorsement on the note, and as to why the bank used the stamp of this kind, bearing the words used on or over the name of Wesley Bishop & Son, to wit: "Demand, notice and protest waived. Payment guaranteed."

&middot; It certainly was erroneous, and prejudicially so to the Bishops, to permit this testimony to go to the jury. The question here to be determined was not as to what the custom or general rule of banks is or may be concerning transactions like the instant one, but the question for determination by the jury was as to what occurred between the parties to the present transaction.

It is not necessary to prolong this discussion further than to say that the record clearly discloses prejudicial error as against the Bishops, as hereinbefore set forth, and for the reasons herein stated the judgment of the common pleas court is reversed and the cause remanded to that court for further proceedings according to law.

*Judgment reversed and cause remanded.*

SHIELDS and LEMERT, JJ., concur.